Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CHILDRESS,<br><br>Plaintiff,<br><br>vs.<br><br>INFINITY PHARMACEUTICALS, INC., SAMUEL AGRESTA, DAVID BEIER, ANTHONY EVNIN, RICHARD GAYNOR, SUJAY KANGO, ADELENE PERKINS, BRIAN SCHWARTZ, and NORMAN SELBY,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Childress ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder action against Infinity Pharmaceuticals, Inc. ("Infinity" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to MEI Pharma, Inc. ("Parent"), through merger

vehicle Meadow Merger Sub, Inc. ("Merger Sub," and together with Parent, "MEI") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a February 23, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Infinity common stock will be converted into the right to receive 0.052245 shares of MEI, resulting in a post-close entity owned by approximately 58% of current MEI stockholders and approximately 42% of current Infinity stockholders.

3.     Thereafter, on April 28, 2023, MEI filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should MEI stock price fluctuate prior to the consummation of the Proposed Transaction.

5.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Infinity and MEI, provided

by Infinity and MEI management to the Board and the Board's financial advisor Aquilo Partners ("Aquilo") or MEI's financial advisor Torreya Capital, LLC ("Torreya") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Aquilo and/or Torreya, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of North Carolina and, at all times relevant hereto, has been an Infinity stockholder.

8.      Defendant Infinity is a clinical-stage biopharmaceutical company, focuses on developing novel medicines for people with cancer.  Infinity is incorporated in Delaware and has its principal place of business at 1100 Massachusetts Avenue, Floor 4, Cambridge, MA 02138. Shares of Infinity common stock are traded on the NASDAQ Stock Exchange under the symbol "INFI".

9.      Defendant Samuel Agresta ("Agresta") has been a Director of the Company at all relevant times.

10.     Defendant David Beier ("Beier") has been a director of the Company at all relevant times.

11.     Defendant Anthony Evnin ("Evnin") has been a director of the Company at all relevant times.

12.     Defendant Richard Gaynor ("Gaynor") has been a director of the Company at all relevant times.

13.     Defendant Sujay Kango ("Kango") has been a director of the Company at all relevant times.

14.     Defendant Adelene Perkins ("Perkins") has been a director of the Company at all relevant times.  In addition Defendant Perkins serves as the Chair of the Company Board and as the Board's Chief Executive Officer ("CEO").

15.     Defendant Brian Schwartz ("Schwartz") has been a director of the Company at all relevant times.

16.     Defendant Norman Selby ("Selby") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent is a late-stage pharmaceutical company, focuses on the development and commercialization of various therapies for the treatment of cancer.  Parent is headquartered in San Diego, CA and trades on the NASDAQ Exchange under the ticker "MEIP".

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

23.     Infinity is a clinical-stage biopharmaceutical company, focuses on developing novel medicines for people with cancer.

24.     The Company's product candidate eganelisib (IPI-549), an orally administered clinical-stage immuno-oncology product candidate that inhibits the enzyme phosphoinositide-3-kinase-gamma, is in Phase 2 clinical trials for the treatment of metastatic triple negative breast cancer and urothelial cancer; and Phase 1/1b clinical trials for the treatment of solid tumors.

25.     In addition Infinity has strategic alliances with Intellikine, Inc. to discover, develop, and commercialize pharmaceutical products targeting the delta and/or gamma isoforms of PI3K; Verastem, Inc. to research, develop, commercialize, and manufacture duvelisib and products containing duvelisib; and PellePharm, Inc. to develop and commercialize rights to its hedgehog inhibitor program, IPI-926, a clinical-stage product candidate, as well as collaboration agreements with F. Hoffmann-La Roche Ltd., and Bristol Myers Squibb Company.

26.     The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive clinical success.  For example, in the November 14, 2022 press release announcing its Q3 2022 financial and clinical results, the Company highlighted such clinical successes as a 52% increase in one-year progression free survival rate in ITT patient population compared to IMpassion130 benchmark.

27.     Speaking on these positive results, Defendant and CEO Perkins stated, "We are encouraged by the long-term benefit seen in front-line TNBC patients reported earlier today from MARIO-3. These data are consistent with the long-term benefit seen in other indications in which eganelisib has been studied..."

28.     Despite this upward trajectory, the Individual Defendants have caused Infinity to enter into the Proposed Transaction without providing requisite information to Infinity stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should MEI stock price fluctuate prior to the consummation of the Proposed Transaction.

31.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and MEI, whether this agreement

differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33.     On February 23, 2023, Infinity and MEI issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN DIEGO, CA. & CAMBRIDGE, Mass.--**(BUSINESS WIRE)--Feb. 23, 2023-- MEI Pharma, Inc. (Nasdaq: MEIP) ("MEI"), a clinical-stage pharmaceutical company focused on advancing new therapies for cancer, and Infinity Pharmaceuticals, Inc. (Nasdaq: INFI) ("Infinity"), a clinical-stage biotechnology company developing eganelisib, a first-in-class, oral, immuno-oncology macrophage reprogramming drug candidate, announced today that the companies entered into a definitive merger agreement for an all-stock transaction forming a company combining the expertise and resources of MEI and Infinity to advance a robust pipeline of three clinical-stage oncology drug candidates. All three clinical-stage development programs have the potential, in combination with current therapies, to overcome known resistance mechanisms and meaningfully improve patient outcomes.
>
> The combined company's clinical-stage oncology development pipeline consists of three differentiated programs:
>
> - Eganelisib, an oral immuno-oncology macrophage reprogramming product candidate, which is planned to be evaluated in combination with the PD-1 targeted checkpoint inhibitor pembrolizumab (KEYTRUDA®) in patients with head and neck squamous cell carcinoma (HNSCC);
>
> - Voruciclib, an oral CDK9 inhibitor, currently being studied in combination with venetoclax (VENCLEXTA®) in patients with hematologic malignancies; and
>
> - ME-344, a novel tumor selective mitochondrial inhibitor targeting the OXPHOS pathway, to be evaluated in combination with bevacizumab (AVASTIN®) in patients with relapsed colorectal cancer.

"We are very excited to enter into this agreement with Infinity given the strength of a combined organization that builds on each company's potential. The combined organization will have three differentiated clinical-stage oncology assets, expected funding into mid-2025 to reach clinical data in all three programs, and a team with extensive oncology clinical development expertise. I believe these ingredients place the merged organization in a strong position to create value for all our stakeholders," said Daniel Gold, Ph.D., President and Chief Executive Officer of MEI Pharma. "The new company's lead program, eganelisib, has already been tested in over 350 patients with demonstrated clinical activity in multiple settings, including in combination therapy with immune checkpoint inhibitors. Along with voruciclib and ME 344, this gives us three promising clinical-stage programs that we believe have significant potential to deliver improved therapeutic options for patients."

"With this planned merger, we are creating a company that is well capitalized to advance a differentiated clinical-stage therapeutic development pipeline leveraging an experienced drug development and leadership team," said Adelene Perkins, Chief Executive Officer and Chair of Infinity. "With data supporting multiple potential development paths for eganelisib, we have prioritized head and neck cancer based on our ability to leverage encouraging progression free survival data from this patient population in MARIO-1. Unfortunately, head and neck cancer remains an area of high unmet medical need with a relatively short PFS and overall survival in patients treated with checkpoint inhibitor monotherapy. Because of this, we prioritized the initiation of a randomized, controlled Phase 2 clinical study combining eganelisib with pembrolizumab in head and neck cancer patients which is intended to demonstrate improved clinical benefit."

"I am looking forward to leading the combined company which, beyond the promising clinical-stage pipeline, leverages the capabilities and resources of two organizations sharing a commitment to developing new oncology therapeutics. The combined company is built around extensive small molecule development experience based on solid science and backed by promising data," said David Urso, J.D., Chief Operating Officer and General Counsel of MEI Pharma, and the Chief Executive Officer of the combined company upon closing of the merger. "At closing, the combined company is projected to have a strong balance sheet of approximately $100 million which is expected to fund planned studies for our clinical candidates through mid-2025 with the potential to deliver near and long-term value for patients and shareholders."

**About the Combined Clinical Pipeline Drug Candidates**

The combined company's pipeline includes three differentiated, clinical-stage, small molecule oncology therapeutic candidates:

- Eganelisib: A potential first-in-class, oral, once-daily, immuno-oncology development candidate that selectively inhibits phosphoinositide-3-kinase gamma. Eganelisib has demonstrated encouraging clinical results and tolerability across a broad range of solid tumors in over 350 patients, including head and neck squamous cell carcinoma (HNSCC), metastatic triple-negative breast cancer (mTNBC), as well as urothelial, ovarian and melanoma cancers. The combined company plans to initiate in Q3 2023, subject to U.S. Food and Drug Administration review, a global, randomized, controlled Phase 2 clinical trial of eganelisib plus pembrolizumab vs pembrolizumab for the potential treatment of first line relapsed/metastatic head and neck squamous cell carcinoma. The primary endpoint of the Phase 2 study will be overall survival. In the second half of 2024 we plan to have initial data on safety and progression free survival.

- Voruciclib: An orally administered Cyclin-Dependent Kinase 9 (CDK9) inhibitor being clinically investigated for hematological malignancies. CDK9 has important functions in cell cycle regulation, including the modulation of two therapeutic targets in cancer: myeloid leukemia cell differentiation protein (MCL1) and the MYC proto-oncogene protein, which regulate cell proliferation and growth. Voruciclib is currently being evaluated in a Phase 1b trial exploring dose and schedule in patients with acute myeloid leukemia (AML) and B-cell malignancies as a single-agent and in combination with venetoclax. The ongoing Phase 1b trial is expected to report initial results from the combination regimen around the end of 2023.

- ME-344: A novel, parenteral, tumor selective mitochondrial inhibitor drug candidate targeting the OXPHOS pathway involved in the production of adenosine. Clinical investigation of ME-344 is focused on use in combination with the VEGF inhibitor bevacizumab (Avastin®). Data reported from an investigator-initiated, multi-center, randomized study of ME-344 in combination with the VEGF inhibitor bevacizumab (Avastin®) demonstrated biologic activity supporting further clinical investigation. Initiation of a Phase 1b trial is planned to evaluate ME-344 plus bevacizumab in patients with relapsed colorectal cancer in the first half of 2023. Data from the Phase 1b trial to support opening enrollment in an expansion cohort are expected to be reported around the end of 2023.

**About the Proposed Merger**

Under the terms of the merger agreement, Infinity will become a wholly owned subsidiary of MEI Pharma. Pursuant to an exchange ratio set forth in the merger agreement, the pre-merger MEI Pharma shareholders are expected to own approximately 58.0% and pre-merger Infinity shareholders are expected to own approximately 42.0% of the outstanding equity of the combined company immediately following the merger.

Subject to shareholder approval and the subsequent closing of the merger, the combined company is expected to be renamed and trade on the Nasdaq Stock Market. The combined company would be headquartered in San Diego, California and led by a team with extensive industry and oncology drug development expertise, including David Urso, Chief Executive Officer, Robert Ilaria, Jr., M.D., Chief Medical Officer, and Stéphane Peluso, Ph.D., Chief Scientific Officer. Daniel Gold, Ph.D., and Adelene Perkins, the current chief executive officers of MEI and Infinity, respectively, would serve on the Board of Directors of the combined company. The Board of Directors is expected to be composed of eight members, consisting of Mr. Norman C. Selby, currently Infinity's Lead Independent Director, who will Chair the Board, Mr. Urso, Dr. Gold, Ms. Perkins, two additional members designated by MEI Pharma, one additional member designated by Infinity and one member mutually agreed upon by MEI Pharma and Infinity.

The merger agreement has been approved by the Boards of Directors of both companies. The merger is expected to close in mid-2023, subject to approvals by MEI Pharma and Infinity shareholders, respectively, and other customary closing conditions.

Torreya Capital, LLC is serving as financial advisor to MEI Pharma, and Morgan, Lewis & Bockius LLP is serving as legal counsel to MEI Pharma. Aquilo Partners, L.P. is serving as financial advisor to Infinity, and WilmerHale is serving as legal counsel to Infinity.

***Potential Conflicts of Interest***

34.     The breakdown of the benefits of the deal indicate that Infinity insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Infinity.

35.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While the Registration Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

| Name and Address of Beneficial Owner (1) | Number of Shares of Common Stock Owned | + | Common Stock Underlying Options, Warrants and Other Rights Acquirable Within 60 Days (2) | = | Total Beneficial Ownership (#) | Percentage of Common Stock Beneficially Owned (%)(3) |
|---|---|---|---|---|---|---|
| **5% Stockholders** | | | | | | |
| Biotechnology Value Fund, L.P. (4) | 6,353,645 | | — | | 6,353,645 | 7.11% |
| The Vanguard Group (5) | 5,313,679 | | — | | 5,313,679 | 5.94% |
| **Directors** | | | | | | |
| Adelene Q. Perkins (6) | 833,801 | | 3,675,762 | | 4,509,563 | 4.84% |
| Samuel Agresta, M.D., M.P.H. | 10,593 | | 165,000 | | 175,593 | * |
| David Beier, J.D. | 8,775 | | 175,000 | | 183,775 | * |
| Anthony B. Evnin, Ph.D. | 215,403 | | 283,500 | | 498,903 | * |
| Richard Gaynor, M.D. | — | | 135,000 | | 135,000 | * |
| Sujay R. Kango | — | | 56,250 | | 56,250 | * |
| Brian Schwartz, M.D. | 30,919 | | 213,750 | | 244,669 | * |
| Norman C. Selby | 15,000 | | 387,000 | | 402,000 | * |
| **Other Named Executive Officers** | | | | | | |
| Lawrence Bloch, M.D., J.D. (7) | 772,223 | | 2,175,221 | | 2,947,444 | 3.22% |
| Robert Ilaria, Jr., M.D. | — | | 154,157 | | 154,157 | * |
| All directors and executive officers as a group (12 persons) | 2,048,291 | | 8,775,979 | | 10,824,270 | 11.02% |
| * Represents holdings of less than 1%. | | | | | | |

36.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows.

| | Number of Infinity Stock Options Subject to Acceleration | Value of Infinity Stock Options Subject to Acceleration ($) (2) | Number of Infinity RSUs Subject to Acceleration (3) | Value of Infinity RSUs Subject to Acceleration ($)(3) |
|---|---|---|---|---|
| **Executive Officers** | | | | |
| Adelene Q. Perkins | 607,615 | 0 | 768,133 | 184,352 |
| Robert Ilaria, Jr. | 223,420 | 0 | 356,747 | 85,619 |
| Stéphane Peluso | 189,809 | 0 | 274,267 | 65,824 |
| Lawrence E. Bloch (1) | — | — | — | — |
| Seth Tasker | 280,729 | 0 | 300,000 | 72,000 |
| **Directors** | | | | |
| Samuel Agresta | — | — | — | — |
| David Beier | — | — | — | — |
| Anthony B. Evnin | — | — | — | — |
| Richard Gaynor | — | — | — | — |
| Sujay Kango | 22,500 | 0 | — | — |
| Brian Schwartz | — | — | — | — |
| Norman C. Selby | — | — | — | — |

37.     Moreover, certain employment agreements with certain Infinity executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites / Benefits ($)(3) | Other ($)(4) | Total ($) |
|------|------|------|------|------|------|
| Adelene Q. Perkins | 717,168 | 184,352 | 35,006 | 250,000 | 1,186,526 |
| Robert Ilaria, Jr. | 475,150 | 85,619 | 45,653 | 250,000 | 856,422 |
| Stéphane Peluso | 436,800 | 65,824 | 45,653 | 200,000 | 748,277 |

38.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39.     Thus, while the Proposed Transaction is not in the best interests of Infinity, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

40.     On April 28, 2023, the Infinity Board and MEI caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

      a.   Adequate information as to why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should MEI stock price fluctuate prior to the consummation of the Proposed Transaction;

      b.   Whether the confidentiality agreements entered into by the Company with MEI differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

      c.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including MEI, would fall away; and

      d.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Infinity's Financial Projections*

42.     The Registration Statement fails to provide material information concerning financial projections for Infinity provided by Infinity management to the Board, Aquilo, and Torreya and relied upon by Aquilo and Torreya in their analyses.  The Registration statement

discloses management-prepared financial projections for the Company which are materially misleading.

43.     Notably the Registration Statement reveals that as part of its analyses, Aquilo reviewed certain, "non-public business and financial information relating to Infinity and MEI, including financial and business forecasts and projections prepared by management of Infinity and MEI, respectively." Whereas Torreya similarly stated it reviewed "certain information, including financial forecasts relating to the business, earnings, cash flow, assets, liabilities and prospects of MEI and Infinity."

44.     The Registration Statement should have, but fails to provide, certain information in the projections that Infinity management provided to the Board, Aquilo, and Torreya. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45.     With regard to the *Infinity Unadjusted Management Forecast*, prepared by Infinity management, the Registration Statement fails to disclose material line items, including the following:

> a.  EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes; and
>
> b.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: income tax expenses, depreciation and amortization, changes in net working capital, and capital expenditures.

46.     With regard to the *Infinity Probability-Adjusted Management Forecast*, prepared by Infinity management, the Registration Statement fails to disclose material line items, including the following:

a.   EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes; and

b.   Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: income tax expenses, depreciation and amortization, changes in net working capital, and capital expenditures

47.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

49.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data for Infinity being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Aquilo or Torreya's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning MEI's Financial Projections*

51.     The Registration Statement fails to provide material information concerning financial projections for MEI provided by Infinity management to the Board, Aquilo, and Torreya and relied upon by Aquilo and Torreya in their analyses.  The Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

52.     Notably the Registration Statement reveals that as part of its analyses, Aquilo reviewed certain, "non-public business and financial information relating to Infinity and MEI, including financial and business forecasts and projections prepared by management of Infinity and MEI, respectively."  Whereas Torreya similarly stated it reviewed "certain information, including financial forecasts relating to the business, earnings, cash flow, assets, liabilities and prospects of MEI and Infinity."

53.     The Registration Statement should have, but fails to provide, certain information in the projections that MEI management provided to the Board, Aquilo, and Torreya.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

54.     With regard to the *Summary of the MEI Projections*, prepared by MEI management, the Registration Statement fails to disclose material line items, including the following:

> a.  EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the definition of EBIT used.

55.     With regard to the *Summary of the Pro Forma Projections*, prepared by MEI management, the Registration Statement fails to disclose material line items, including the following:

      a.  EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the definition of EBIT used

56.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

57.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

58.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

59.     Without accurate projection data for MEI or the Pro Forma being presented in the Registration Statement, Plaintiff is unable to properly evaluate the merger consideration's true worth, the accuracy of the Aquilo or Torreya's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Aquilo*

60.     In the Registration Statement, Aquilo describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

61.     With respect to the *Comparable Companies Analysis*, the Registration Statement fails to disclose:

    a.   The specific inputs and assumptions used to determine the utilized multiple reference range of a 1st quartile to 3rd quartile range of the implied enterprise values.

62.     With respect to the *Infinity Discounted Cash Flow (DCF) Analysis*, the Registration Statement fails to disclose:

    a.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10% to 14%;

    b.   The specific risk and time value associated with the probability-adjusted projections utilized;

    c.   In the instance of the non-probability adjusted basis analysis, the specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 30% to 35%; and

    d.   In the instance of the non-probability adjusted basis analysis, the specific risk and time value associated with the probability-adjusted projections utilized.

63.     With respect to the *MEI Discounted Cash Flow (DCF) Analysis*, the Registration Statement fails to disclose:

    a.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10% to 14%;

b. The specific risk and time value associated with the probability-adjusted projections utilized;

c. In the instance of the non-probability adjusted basis analysis, the specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 30% to 35%;

d. In the instance of the non-probability adjusted basis analysis, the specific risk and time value associated with the probability-adjusted projections utilized

64. With respect to the *Equity Financing Analysis*, the Registration Statement fails to disclose.

a. The specific reference range of discounts/premiums utilized in the analysis, and the inputs and assumptions used to create this range.

65. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

66. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Infinity stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
*Torreya*

67.     In the Registration Statement, Torreya describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

68.     With respect to the *Discounted Cash Flow Analysis - MEI*, the Registration Statement fails to disclose the following:

a.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 12.0% to 15.7%;

b.  MEI's cost of equity utilized and the specific inputs and assumptions used to determine it;

c.  MEI's terminal values calculated; and

d.  The specific inputs, metrics, and assumptions used to determine the utilized terminal growth rate range of -20% to -70%;

69.     With respect to the *Discounted Cash Flow Analysis – Pro Forma*, the Registration Statement fails to disclose the following:

a.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 12.0% to 15.7%;

b.  The specific inputs, metrics, and assumptions used to determine the utilized terminal growth rate range of -20% to -70%;

70.     With respect to the *Comparable Companies Analysis*, the Registration Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to determine the utilized multiple reference range of 0.16x and 0.58x of EV/Adj. Peak Revenue.

71.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

72.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Infinity stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     Defendants have disseminated the Registration statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

75.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

76.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Registration statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

77.     The Registration statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration statement is materially misleading and omits material facts that are necessary to render them non-misleading.

78.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

79.     The Individual Defendants were at least negligent in filing a Registration statement that was materially misleading and/or omitted material facts necessary to make the Registration statement not misleading.

80.     The misrepresentations and omissions in the Registration statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

81.     Plaintiff repeats all previous allegations as if set forth in full herein.

82.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

83.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The

Individual Defendants were able to, and did, control the contents of the Registration statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

84.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Infinity's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration statement and are therefore responsible and liable for the misrepresentations contained herein.

85.     The Individual Defendants acted as controlling persons of Infinity within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Infinity to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Infinity and all of its employees.  As alleged above, Infinity is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: May 3, 2023                          **BRODSKY & SMITH**

                                   By:  *Evan J. Smith*
                                        _____
                                        Evan J. Smith
                                        240 Mineola Boulevard
                                        Mineola, NY  11501
                                        Phone:  (516) 741-4977
                                        Facsimile (561) 741-0626

                                        *Counsel for Plaintiff*